11-467-cv
Broich v. The Incorporated Village of Southampton

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. when citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). a party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 15th day of February, two thousand twelve.

PRESENT:

JOSÉ A. CABRANES,
CHESTER J. STRAUB,
DEBRA ANN LIVINGSTON,

*Circuit Judges.*

_____

CHRISTOPHER BROICH,

*Plaintiff-Appellant*,

-v.-                                                          No. 11-467-cv

THE INCORPORATED VILLAGE OF SOUTHAMPTON, THE BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF SOUTHAMPTON, MARK EPLEY, Individually and as Mayor of The Incorporated Village of Southampton, BONNIE M. CANNON, Individually and as Trustee of The Incorporated Village of Southampton, NANCY C. MCGANN, Individually and as Trustee of The Incorporated Village of Southampton, PAUL L. ROBINSON, Individually and as Trustee of The Incorporated Village of Southampton, LARS KING, Individually and as Former Chief of Police of The Incorporated Village of Southampton, WILLIAM WILSON, JR., Individually and as  Chief of Police of The Incorporated Village of Southampton,

*Defendants-Appellees*.

_____

1

STEVEN A. MORELLI (Eric S. Tilton, *on the brief*), The Law Office of Steven A. Morelli, P.C., Garden City, NY, *for Plaintiff-Appellant*.

DIANE K. FARRELL (Jeltje deJong, *on the brief*), Devitt Spellman Barrett, LLP, Smithtown, NY, *for Defendants-Appellees*.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *Judge*) entered January 25, 2011.

**AFTER ARGUMENT AND UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the District Court is **AFFIRMED** in part **AND VACATED** in part and the case **REMANDED** for further proceedings consistent with this **SUMMARY ORDER**.

Plaintiff-appellant Christopher Broich appeals from a judgment of the District Court entered January 25, 2011 granting summary judgment to defendants-appellees on all of Broich's claims. We assume the parties' familiarity with the underlying facts and procedural history. Following our *de novo* review of the record, we vacate the January 25, 2011 Judgment insofar as it relates to Broich's failure-to-promote claim under 42 U.S.C. § 1981, and affirm the District Court in all other respects.

* * *

**I. The Failure-to-Promote Claims**

**A. The Section 1981 Claim**

The District Court granted summary judgment, *sua sponte* and without notice, on Broich's failure to promote claim under 42 U.S.C. § 1981, concluding that "[t]he record is devoid of any direct evidence of racial animus and . . . there is insufficient circumstantial evidence from which a jury can infer that defendants intentionally discriminated against plaintiff on the basis of his race with respect to the failure to promote him in February 2005." *Broich v. Inc. Vill. of Southampton*,

2

No. 08-cv-553, 2011 WL 284484, at *10 (E.D.N.Y. Jan. 25, 2011). We review a district court's decision to grant summary judgment *sua sponte* to the defendants *de novo*, drawing all inferences in favor of the non-moving party. *See Schwan-Stabilo Cosmetics GmbH v. Pacificlink Int'l Corp.*, 401 F.3d 28, 31 (2d Cir. 2005). While district courts may in some circumstances grant summary judgment *sua sponte* without notice, "we have firmly discouraged th[at] practice." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000). A district court, before granting summary judgment without notice and an opportunity to be heard, must take care to "determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (quoting *Schwan-Stabilo Cosmetics*, 401 F.3d at 33).

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms and conditions of a contractual relationship, such as employment," *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004); it reads, in relevant part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To establish a claim under 42 U.S.C. § 1981(a), a plaintiff must show "(1) that []he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture v. IBM*, 216 F.3d 258, 261 (2d Cir. 2000).[1] A plaintiff's efforts to establish the

---

[1] It is clear that § 1981 "protect[s] all persons, including whites, from discrimination on account of race." *Keating v. Carey*, 706 F.2d 377, 383 n.9 (2d Cir. 1983) (citing *McDonald v. Santa*

3

second element of a § 1981 claim are subject to the same burden-shifting analysis as intentional discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999).

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff asserting racial discrimination bears the initial burden of establishing a prima facie case of discrimination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). In order to establish a prima facie case of employment discrimination, a plaintiff must demonstrate:

> (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

*Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

A plaintiff may raise an inference of discrimination for purposes of the prima facie case by "showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group." *Mandell v. County of Suffolk*, 316 F.3d 368, 370 (2d Cir. 2003) (internal quotation marks omitted). A plaintiff must be similarly situated "in all material respects to the individuals whom [he] seeks to compare [him]self with." *Id.* (quoting *Graham v. LIRR*, 230 F.3d 34, 39 (2d Cir. 2000)). "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury," *id.* at 368, but "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met," *Harlen Assocs. v. Inc.*

---

*Fe Trail Transp. Co.*, 427 U.S. 273, 295-296 (1976)) (internal quotation marks omitted).

4

*Vill. of Mineola*, 273 F.3d 494, 499 n.2 (citing *Cruz v. Coach Stores*, 202 F.3d 560, 568 (2d Cir. 2000)).

If a plaintiff successfully establishes a prima facie case of discrimination, "the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). "Upon the defendant's articulation of such a non-discriminatory reason, the presumption of discrimination arising with the establishment of the prima facie case drops from the picture." *Id.* (emphasis removed). The burden shifts back to plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Id.*

It is the first step of the burden-shifting framework that is at issue here: whether Broich has established his prima facie case of employment discrimination by demonstrating that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Although the District Court concluded that the record was devoid of such evidence, we hold that there is sufficient evidence for a factfinder to infer that Broich was passed over for promotion under circumstances giving rise to an inference of discriminatory intent.

Broich alleged in his sworn EEOC charge that he was white, that he sought and was qualified for a promotion to detective sergeant, and that the promotion went to an African-American detective in the Southampton Village Police Department (Herman Lamison) who had less time in rank and less supervisory experience than Broich. Broich also alleged that Lamison was promoted to provide political advantage to one of the candidates in the upcoming Southampton mayoral election, in which race was a salient issue.

"Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is 'minimal.'" *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)). We have held that a showing by a plaintiff that he was qualified for a position and had greater or comparable seniority to the individual who received a promotion to that position is "enough evidence to support a finding that the promoted officer[] and plaintiff were sufficiently similarly situated to support an inference of discrimination." *Mandell*, 316 F.3d at 379.

Further, we have said that in addressing a motion for summary judgment as to employment discrimination claims, a "trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue," and affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). However, in analyzing Broich's failure-to-promote claim under § 1981, the District Court did not discuss Broich's statements in his EEOC charge. The District Court simply concluded that "[t]he record is devoid of any direct evidence of racial animus and . . . there is insufficient circumstantial evidence from which a jury can infer that defendants intentionally discriminated against plaintiff on the basis of his race with respect to the failure to promote him in February 2005." *Broich*, 2011 WL 284484, at *10. However, Broich's EEOC charges are sworn affidavits and are allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion. *See Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

6

affidavits or declarations. . . .").  These statements allege facts sufficient for a jury to infer that defendants intentionally discriminated against plaintiff on the basis of his race with respect to the failure to promote him in February 2005.

Defendants contend that "Broich's sworn statement to the EEOC also includes the observations that other factors played a part in the decision to appoint Lamison to the open position," and that he may also have been discriminated against for non-racial reasons, because he had no children, had a disability in his left eye, or lived with his Latina girlfriend.  According to Defendants, Broich's sworn statement in his EEOC charge does not give rise to an inference of discrimination on the basis of race, any more than it gives rise to an inference of discrimination on these or other irrelevant personal characteristics.

Defendants merely point out *opposing* inferences that could be drawn from Broich's sworn statement.  It is not for us to choose among inferences—whether the "inference of discrimination [was] based on a purported eye disability, the fact that [Broich] was unmarried, or had a Latino girlfriend, or was childless, or of German ancestry, or had made the most DWI arrests within the Village"—and determine which inference is most likely.  Our inquiry is simply whether a rational juror could make an inference of racial discrimination from Broich's sworn statement.  *Patterson*, 375 F.3d at 221 ("In order to make out a prima facie case of racial discrimination in the termination of employment in violation of Title VII, a plaintiff is required to adduce some evidence that would permit a factfinder to infer . . . that the termination occurred under circumstances giving rise to an inference of discrimination.").  Based on this record, taking all inferences in favor of Broich, we conclude, contrary to the District Court, that Broich established a prima facie case pursuant to § 1981 at step one of the *McDonnell Douglas* framework.  We therefore vacate the District Court's

7

*sua sponte* grant of summary judgment on this claim, and remand for further proceedings consistent with this order.

**B. The Section 1983/First Amendment Claim**

Broich also argues that the district court erred in granting summary judgment to defendants on his putative claim, under 42 U.S.C. § 1983 and the First Amendment, that defendants chose to promote Lamison over him in retaliation for his protected political affiliation and campaign activities in the then-pending mayoral election campaign. After a full review of the record, we affirm on this failure-to-promote claim for substantially the reasons stated in the opinion of the District Court.

**II. The Retaliation Claims**

In addition to his failure-to-promote claims, Broich appeals the District Court's grant of summary judgment to defendants on each of three sets of retaliation claims: one under 42 U.S.C. §§ 1981 and 2000e-3 (Title VII), and two under 42 U.S.C. § 1983 and the First Amendment that allege retaliation for political affiliation and alleged whistle-blowing.

**A. The Section 1981/Title VII Claim**

Broich's retaliation claim under § 1981 and Title VII is that defendants initiated disciplinary charges against him, and eventually terminated his employment, in part because of the EEOC charge that he had filed alleging racial discrimination in the decision to promote Lamison. Defendants argue instead that they initiated disciplinary action culminating in Broich's termination because he committed numerous acts of misconduct while in the Southampton Village Police Department (SVPD).

"Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis," an offshoot of the familiar *McDonnell Douglas* framework. *Hicks v. Baines*, 593 F.3d

159, 164 (2d Cir. 2010). First, a "plaintiff must establish a prima facie case of retaliation by showing: "`(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

If plaintiff sustains this initial, "*de minimis*" burden, "a presumption of retaliation arises," and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). If defendant meets this burden of production, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id.* (internal quotation marks omitted). This requirement, however, can be satisfied by proof that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Id.* at 164-165 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

The District Court concluded that Broich had made out a prima facie case of retaliation and defendants do not challenge that conclusion on appeal. The District Court nonetheless granted summary judgment to defendants, because it held that the findings of the hearing officer at Broich's disciplinary hearing conclusively established that the disciplinary charges were brought and acted upon by defendants for non-retaliatory reasons. This holding was error.

Broich, as a Southampton police officer, enjoyed certain civil service protections under New York law; in particular, as relevant here, he could only be terminated for charges of incompetence

9

or misconduct, following a hearing on those charges. N.Y. Civil Service Law § 75. New York law also provides a whistle-blowing defense at such a hearing. Broich, if he reasonably believed that the disciplinary action "would not have been taken but for [protected whistle-blowing activity]," could assert that claim as a defense; if the hearing officer found "that the dismissal or other disciplinary action [was] based *solely* on a violation by the employer [of the whistle-blower protections]," the hearing officer was to dismiss or recommend dismissal of the disciplinary charges. N.Y. Civil Service Law § 75-b(3)(a) (emphasis added).

At his disciplinary hearing, Broich asserted, pursuant to § 75-b(3), that charges were brought against him because of statements that he had made to the Suffolk County District Attorney's Office and the State Commission on Investigation, regarding alleged misconduct in the SVPD. The hearing officer, however, found that "Chief Wilson preferred the instant charges against [Broich] . . . because of the seriousness of the charges and the impact of [Broich's] conduct on the Department, and not out of any sense of personal animus towards [Broich] or due to any motive to retaliate against [Broich] for bringing certain matters to the attention of the District Attorney's Office and the Commission." He went on to say that "I find that [Broich] did not prove that 'but for' his reporting certain alleged improper governmental actions, the instant disciplinary charges would not have been preferred against him. . . . Accordingly, [Broich's § 75-b(3) defense] is not sustained. . . . [Broich] has failed to prove that the instant charges were filed against him solely as a result of his engaging in protected conduct. . . ."

The District Court held, and defendants contend on appeal, that these determinations are entitled to collateral estoppel effect in the present action,[2] and preclude Broich from showing that

---

[2] On appeal, defendants also assert that the hearing officer's determinations are entitled to claim preclusive effect, as well. Defendants did not assert claim preclusion (in addition to their argument as to issue preclusion) in the district court, and the argument is therefore waived. *Wal-*

10

the charges and termination were motivated by retaliatory animus. Quasi-judicial factfinding by a state administrative body is given "the same preclusive effect to which it would be entitled in the State's courts." *Locurto v. Giuliani*, 447 F.3d 159, 170 (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)). New York courts will give collateral estoppel effect to decisions of such bodies if, *inter alia*,"the identical issue necessarily must have been decided in the prior action," *Kaufman v. Eli Lilly & Co.*, 65 N.Y. 2d 449, 455 (1985); for purposes of this requirement, "[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination," *id.* at 456.

The "identical issue necessarily decided" requirement comprises three separate prongs: "(1) the issues of both proceedings must be identical, (2) the relevant issues [must have been] actually litigated and decided in the prior proceeding, . . . [(3)] the issues [must have been] necessary to support a valid and final judgment on the merits." *Leather v. Ten Eyck*, 180 F.3d 420, 425-426 (2d Cir. 1999) (quoting *Cent. Hudson Gas & Electric Corp. v. Empress Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1999)).

Here, Broich did not raise the defense in the hearing that the charges were illegitimate retaliation for his EEOC charge (or his political affiliation and activities), and the hearing officer did not consider such a defense *sua sponte*. Moreover, under state law, the only finding necessary to support a valid judgment in the administrative hearing was that the SVPD was not *solely* motivated by retaliatory animus against Broich for initiating disciplinary action against him. *See* N.Y. Civil Service Law § 75-b(3). But to make out a claim for unlawful retaliation in violation of Title VII or § 1981, a plaintiff must establish merely that the protected activity "was a substantial

---

*Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 124 n.9 (2d Cir. 2005).

11

reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).[3] Thus, granting collateral estoppel effect to those hearing officer findings that were necessary to support his ultimate determination would not preclude Broich from making out the required elements of a § 1981/Title VII retaliation claim, and the District Court erred in holding to the contrary.[4]

While the District Court erred in viewing this claim as precluded by collateral estoppel, we nonetheless affirm.[5] Broich has failed to adduce sufficient evidence to create a genuine dispute of material fact as to whether the SVPD was motivated in substantial part by retaliatory animus in bringing disciplinary charges against him. In addition, Broich failed to introduce evidence sufficient to create a genuine dispute of material fact as to whether the Southampton Village Board of Trustees, in approving his termination, was motivated in whole or in part by retaliatory animus, or that its decision was influenced by the allegedly retaliatory initiation of disciplinary charges rather than by the determination by an unbiased hearing officer that those charges had been substantiated.[6]

---

[3] Similarly, in § 1983/First Amendment retaliation cases, a plaintiff need only show that the protected activity "was a 'motivating factor' in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006).

[4] The District Court also erred in concluding that the hearing officer's determination substantiating the charges brought against Broich "rebut[s] any claim by plaintiff that charges were preferred and pursued [and] that he was placed on administrative leave and suspended" for a retaliatory purpose." That the SVPD had sufficient justification to bring charges against Broich does not resolve the question of whether they would in fact have brought the charges in the absence of retaliatory animus. *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 & n.8 (2d Cir. 1987) ("In the event, however, that appellees were motivated by retaliatory animus in instituting the Section 75 proceeding, Title VII would be violated even though there were objectively valid grounds for the proceeding and the resulting discharge.").

[5] We may affirm on any ground supported by the record. *Doninger v. Niehoff*, 527 F.3d 41, 50 n.2 (2d Cir. 2008).

[6] Broich does not challenge the impartiality of the hearing officer on appeal.

*Cf. Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1193 (2011) ("[I]f the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . . then the employer will not be liable."). We therefore affirm the District Court's grant of summary judgment to defendants on this retaliation claim.

**B. The Section 1983/First Amendment Claim (Political Affiliation)**

Broich also argues that the District Court erred in granting summary judgment to defendants on his claim that the disciplinary charges and termination were partially motived by a desire to retaliate against him for his political affiliation and campaign activities in the 2005 village mayoral election, in violation of the First Amendment and 42 U.S.C. § 1983.

To make out a prima facie case of First Amendment retaliation, a public employee must show that "he has engaged in protected First Amendment activity, he suffered an adverse employment action, *and* there was a causal connection between the protected activity and the adverse employment action." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011) (emphasis added). Defendants do not dispute that the activity at issue was protected, and we have previously held that the initiation of disciplinary charges leading to an administrative hearing permitting "suspension with pay and carr[ying] with it the threat of possible termination" constitutes adverse employment action. *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 313-314 (2d Cir. 2005).

The District Court held, however, that Broich was precluded from showing that the disciplinary charges and termination were even partially the product of retaliatory animus based on his political affiliation, on the same collateral estoppel grounds as pertained to the § 1981/Title VII retaliation claim discussed above. Again, while the District Court erred in viewing this claim as precluded by collateral estoppel, we nonetheless affirm its grant of summary judgment. Broich

13

failed to introduce sufficient evidence to create a genuine dispute of material fact as to whether there was a causal connection between his political affiliation and allegiances and the adverse employment action, and therefore cannot make out a prima facie case of First Amendment retaliation on this claim.

**C. The Section 1983/First Amendment Claim (Whistle-blowing)**

Finally, Broich contends that the district court erred in granting summary judgment to defendants on his claim that one of the motives for the initiation of disciplinary charges against him (and his eventual termination) was retaliation for various allegations that he had made of corruption and other misconduct in the SVPD. We affirm on this claim for substantially the reasons stated in the opinion of the District Court.

* * *

We have reviewed Broich's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED** in part **AND VACATED** in part and the case **REMANDED** for further proceedings consistent with this **SUMMARY ORDER**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

14